# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| JOSE H. RUIZ RAMOS and<br>FRANCISCO ZEPEDA RAMOS, | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Case No.:** __2:18-cv-02942-DCN__ |
| STONE FORESTRY SERVICES, INC.<br>AND RANDY STONE | ) ) ) | |
| **Defendants.** | ) ) ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES,
## COSTS OF LITIGATION AND ATTORNEY'S FEES

### INTRODUCTION

1.       This is an action by two (2) migrant agricultural workers who were admitted to the United Sates to work under the H-2B temporary guest worker program. Plaintiffs were recruited by Defendants in the 2015-2016, 2016-2017 and 2017-2018 reforestation seasons to work planting tree seedlings, thinning young trees and performing other forest maintenance tasks, as well as gathering and baling pine straw in Colleton County, South Carolina.

2.       Plaintiffs bring this action against Defendants to secure and vindicate rights afforded to them under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§1801 *et seq.* ("AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the South Carolina Wage Payment Act, S.C. Code §41-10-10, *et seq.,* federal regulations governing the H-2B guestworker worker program, 29 C.F.R. §§ 503, *et seq.,* and to recover damages for Defendants' breach of their contractual obligations.

3.      Defendants' contractual breaches include their failure to pay required wages and to provide transportation benefits as promised in their contracts with the Plaintiffs and as otherwise required by federal regulations governing the H-2B guestworker program.

4.      Plaintiffs seek to recover their wages, actual, liquidated, consequential and compensatory damages, and pre- and post-judgment interest. Plaintiffs also seek a reasonable attorney's fee pursuant to 29 U.S.C. § 216 (b) and S.C. Code § 41-10-80(C).

## JURISDICTION AND VENUE

5.      Jurisdiction is conferred on this Court by 29 U.S.C. §1854 (Migrant and Seasonal Agricultural Worker Protection Act), 29 U.S.C. §216(b) (Fair Labor Standards Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction). This Court has supplemental jurisdiction over the claims arising under state and common law because these claims are so closely related to the federal claims that they form part of the same case and controversy.

6.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (c) because Defendants Stone Forestry Services, Inc. and Randy Stone had extensive, systemic, and continuous dealings in this district and this lawsuit arises out of these activities.

8.      Venue is proper in this district pursuant to 29 U.S.C. § 1854 (a) because this action arises under the Migrant and Seasonal Agricultural Worker Protection Act and this Court has jurisdiction of the parties.

## PARTIES

9.      Defendant Stone Forestry Services, Inc. is a closely held corporation headquartered in Trenton, Georgia.

10.     Defendant Stone Forestry Services, Inc. is engaged in the planting of tree seedlings, as well as pre-commercial thinning and other forest management and maintenance activities designed to enhance the production of commercial forestry products for sale in interstate commerce. Stone Forestry Services, Inc. also is engaged in the gathering and baling of pine straw for sale in interstate commerce. Defendant Stone Forestry Services, Inc. is an enterprise engaged in the production of goods for commerce and has annual sales of at least $500,000.00.

11.     At all times relevant to this action, Defendant Stone Forestry Services, Inc. employed or jointly employed Plaintiffs and their other co-workers within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g).

12.     At all times relevant to this action, Defendant Stone Forestry Services was a farm labor contractor within the meaning of the AWPA, 29 U.S.C. § 1802(7) in that, for money or other valuable consideration,  it recruited, solicited, hired, employed, furnished or transported Plaintiffs and other migrant or seasonal agricultural workers.

13.     Defendant Stone Forestry Services, Inc. employed Plaintiffs to perform various reforestation tasks related to the production of forest products for sale in interstate commerce, including planting tree seedlings. Defendant Stone Forestry Services also employed Plaintiffs for various tasks relating to the production of pine straw for commercial sale in interstate commerce. Plaintiffs' employment with Defendant Stone Forestry Services constituted agricultural employment within the meaning of the AWPA, 29 U.S.C. § 1802(3) because it involved the handling, planting and/or packing of agricultural commodities in their unmanufactured state.

14.     Defendant Randy Stone is the sole owner and executive of Defendant Stone Forestry Services. Defendant Randy Stone is a citizen of and resides in Rising Fawn, Georgia.

3

Both Stone Forestry Services, Inc. and Randy Stone regularly and continuously conduct business in South Carolina.

15.     At all times relevant to this action, Defendants Stone Forestry Services, Inc. and Randy Stone employed or jointly employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g).

16.     At all times relevant to this action, Defendants Stone Forestry Services, Inc. and Randy Stone were farm labor contractors within the meaning of the AWPA, 29 U.S.C. § 1802(7),  in that, for money or other valuable consideration, recruited, employed, furnished or transported Plaintiffs and other migrant agricultural workers.

17.     Defendants Stone Forestry Services, Inc. and Randy Stone employed Plaintiffs to perform various reforestation tasks related to the production of forest products for sale in interstate commerce, including planting tree seedlings. Plaintiffs' employment with Defendants Stone Forestry Services, Inc. and Randy Stone constituted agricultural employment within the meaning of the AWPA, 29 U.S.C. § 1802(3) because it involved the handling, planting and/or packing of agricultural commodities in their unmanufactured state.

18.     At all times relevant to this action, Plaintiffs were H-2B temporary guest workers within the meaning of 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Plaintiffs are fluent only in the Spanish language.

19.     At all times relevant to this action, Plaintiffs were employees of Defendants Stone Forestry Services, Inc. and Randy Stone within the meaning of 29 U.S.C. § 203(e)(1) and 203 (g).

20.     At all times relevant to this action, Plaintiffs were employed by Defendants Stone Forestry Services, Inc. and Randy Stone in an enterprise engaged in commerce or the production of goods for commerce.

21.     At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a seasonal or other temporary nature and were required to be absent overnight form their respective  permanent places of residence.

## STATEMENT OF FACTS

### A.     *H-2B Temporary Guest worker Program*

22.     An employer anticipating a shortage of workers to perform seasonal or temporary jobs may import aliens to perform these activities if the U.S. Department of Labor ("USDOL") certifies that two conditions are met: (1) there are not enough U.S. workers ready and available to perform the jobs and (2) the hiring of alien workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. §§1101(a)(15)(H)(ii)(b) and 20 C.F.R. § 655.1. Aliens imported under this provision are commonly referred to as "H-2B workers."

23.     As the first step in obtaining permission to import H-2B workers, a prospective of employer must file with the USDOL an application for a prevailing wage determination.  The USDOL then makes a prevailing wage determination and returns the endorsed determination to the employer. 20 C.F.R. § 655.10(a).

24.     In addition to obtaining a prevailing wage determination, prior to filing an Application for Temporary Employment Certification, an employer must submit a "job order" to

the State Workforce Agency (SWA) serving the area of intended employment and attempt to recruit U.S. workers through advertising. 20 C.F.R. § 655.16.

25.    Using ETA Form 9142B, an employer must then file an Application for Temporary Employment Certification with the USDOL. 20 C.F.R. § 655.15(a). The application includes an attestation that the employer will abide by certain conditions relating to wages, will comply with wage-related laws and regulations, will provide full-time employment, worksite placement, and transportation, among other things. 20 C.F.R. § 655.20. Among these terms are the following:

(a) The employer will pay all workers at least the applicable prevailing wage rate for every hour or portion thereof during a pay period. 20 C.F.R. § 655.20(a)(1);

(b) The employer will keep accurate and adequate records with respect to the workers' earnings, including but not limited to, daily field tally records, records showing the nature and amount of the work performed, piece rate records and units produced, and deductions from wages. 20 C.F.R. § 655.20(i)(1);

(c) The employer will furnish workers on or before each pay day, hours and earnings statements containing, *inter alia,* the hours worked during the pay period, total earnings during the pay period, and,  if the worker is paid on a piece rate basis, the units produced daily. 20 C.F.R. § 655.20(i)(2);

(d) Upon completing the period of employment described in the job order, the employer will provide or pay workers the cost of return transportation and daily subsistence from the place of employment to the workers' home town. 20 C.F.R. § 655.20(j)(1)(ii);

(e) The employer will pay or reimburse the workers during the first week of employment, for all visa, visa processing, border crossing, and other related fees incurred by the

employee with respect to his efforts to obtain a visa and perform the employer's job. 20 C.F.R. § 655.20(j)(2); and

(f)  The employer will comply with applicable federal, state, and local employment-related laws and regulations, including health and safety laws. 20 C.F.R. § 655.20(z).

## B.   *Plaintiffs' Working Arrangements*

26.      Prior to the commencement of the 2015-2016, 2016-2017 and 2017-2018 reforestation seasons, Defendants Stone Forestry and Randy Stone submitted Applications for Temporary Employment Certification on ETA Form 9142B, seeking admission of H-2B guestworkers for reforestation and conservation activities at various locations, including locations in South Carolina, Georgia, Florida, and Virginia.

27.      The 2015-2016 Application for Temporary Labor Certification submitted by Defendants promised payment of a prevailing wage rate between $12.03 and $17.46, depending on the location of the work performed. This application sought certification for the period from December 15, 2015 through September 14, 2016 and contained an assurance by Defendants that the employment would comply with all applicable federal and state employment-related laws.

28.      In their 2015-2016 Application for Temporary Labor Certification, Defendants requested admission of 164 H-2B temporary workers to fulfill their labor needs for forestry-related activities.

29.      The 2016-2017 Application for Temporary Labor Certification submitted by Defendants promised payment of a prevailing wage rate between $9.17 and $24.21, depending on the location of the work performed. This application sought certification for the period from December 16, 2016 through October 14, 2017 and contained an assurance by Defendants that the employment would comply with all applicable federal and state employment-related laws.

30.     In their 2016-2017 Application for Temporary Labor Certification, Defendants requested admission of 165 guestworkers to fill their labor needs for forestry-related activities.

31.     The 2017-2018 Application for Temporary Labor Certification submitted by Defendants promised payment of a prevailing wage rate between $11.76 and $22.78, depending on the location of the work performed. This application sought certification for the period from December 17, 2017 through September 16, 2018 and contained an assurance by the Defendants that the employment would comply with all applicable federal and state employment-related laws.

32.     In their 2017-2018 Application for Temporary Labor Certification Defendants requested admission of 165 H-2B guestworkers to fulfill their labor needs for forestry-related activities.

33.     The USDOL ultimately granted Defendants' Applications for Temporary Labor Certification as described in Paragraphs 26 through 32 and certified the need for H-2B guestworkers for forestry-related activities.

34.     The temporary labor certification applications described in Paragraphs 26 through 33, constituted working arrangements between Plaintiffs and Defendants within the meaning of the AWPA, 29 U.S.C. §1822(c).

C.     *Hiring and Recruitment of Plaintiffs*

35.     After the USDOL certified their need for H-2B temporary guest workers and before the commencement of each of the respective certification periods described *supra,* Defendants engaged the services of farm labor contractor Juan Campos Guzman to recruit, hire and furnish H-2B guestworkers for Defendants' forestry-related activities at various locations in South Carolina, Florida, Alabama, Georgia, North Carolina and elsewhere.

36.     Defendants authorized Juan Campos Guzman to take all other actions needed to accomplish the purposes described in Paragraph 35, including recruiting workers from various states in Mexico.

37.     Defendants compensated Juan Campos Guzman for his services recruiting, hiring, and furnishing the migrant workers for Defendants' operations.

38.     At all times relevant to this action, Juan Campos Guzman operated  as a farm labor contractor, within the meaning of the AWPA,  29 U.S.C. §1802(7) in that, for a fee,  he recruited, solicited, hired, employed, or transported migrant agricultural workers on behalf of Defendants.

39.     In approximately October or November of 2015 and 2016, and prior to the commencement of the 2015-2016 and 2016-2017 reforestation seasons, acting as Defendants' recruiter and hiring agent and as authorized by Defendants, Juan Campos Guzman recruited Plaintiff Francisco Zepeda Ramos from his home town in Guanajuato, Mexico.

40.     In approximately October or November of 2017, and prior to the commencement of the 2017-2018 reforestation season, acting as Defendants' recruiter and hiring agent and as authorized by Defendants, Juan Campos Guzman recruited Plaintiffs Francisco Zepeda Ramos and  Jose H. Ruiz Ramos from their respective home towns in Guanajuato, Mexico.

41.     Juan Campos Guzman, acting as Defendants' recruiting and hiring agent, conducted many of his recruitment activities in Mexico, where he recruited and hired Plaintiffs and other Mexican nationals to fill the positions described in the Defendants' temporary labor certification applications as described in Paragraphs 26 through 32.

42.    Juan Campos Guzman required Plaintiffs to pay him and/or his agents a hiring fee as a precondition of being selected or re-selected for the positions with Defendants, as described in Paragraph 41.

43.    At the time of the recruitment as described in Paragraphs 41 and 42, Plaintiffs were not provided with a written statement in Spanish of the terms and conditions of proffered employment, as required by the AWPA, 29 U.S.C. § 1821(a) and (g), and its implementing regulations, 29 C.F.R. § 500.75(b) and 500.78.

44.    The labor certifications described in Paragraphs 27, 29, and 31 constituted working arrangements between Defendants and Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1822(c), and its implementing regulations, 29 C.F.R. 500.72.

45.    Following their recruitment and hiring as described in Paragraphs 41 and 42, Plaintiffs traveled to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico, where they applied for and were issued H-2B temporary work visas allowing them to enter the United States for employment with Defendants.

46.    Each of the Plaintiffs personally paid all of the fees associated with his efforts to apply for and obtain an H-2B temporary work visa. These fees included the cost of transportation from the worker's home town to Monterrey, hotel expenses during his stay in Monterrey while waiting for his consular interview, and visa fees.

47.    After their visas were approved, Plaintiffs traveled by bus at their own expense from Monterrey to Walterboro, South Carolina. At the U.S./Mexico border, each Plaintiff paid $6.00 to obtain an arrival/departure Form I-94 from U.S. immigration authorities.

### D.    *Housing and Transportation*

48.     Juan Campos Guzman owned or controlled several trailer park homes in the Walterboro area to which he assigned that he used to accommodate the H-2B workers Defendants hired pursuant to their temporary labor certification applications described in Paragraphs 26 through 32.  Acting as Defendants' agent, Campos Guzman assigned the H-2B workers to these housing facilities.

49.     Upon Plaintiffs' arrival in Walterboro, Juan Campos Guzman, acting in his capacity as Defendants' recruiting and hiring agent, presented Plaintiffs with a document in English for their signature. Although they briefly saw the document, which they believe pertained to their housing, Plaintiffs were not afforded an opportunity to read the document and were not offered a comprehensive explanation of its nature and purpose.

50.     On behalf of Defendants, Juan Campos Guzman assigned Plaintiffs to a housing facility in Walterboro. Throughout the period they were employed by Defendants, Plaintiffs resided in housing facilities controlled provided by Defendants through their agent, Juan Campos Guzman.

51.     The housing facilities described in Paragraph 48 and 50 consisted of a three bedroom single-family home, with one kitchen and one bathroom.

52.     During his employment with Defendants, Plaintiff Francisco Zepeda Ramos lived in a housing facility, as described in Paragraphs 48 and 50-51, with thirteen (13) other H-2B workers. Each of the occupants paid $53.00 per week in rent for these accommodations. These sums exceeded the actual costs of providing the housing facility and included a substantial profit for Juan Campos Guzman.

53.     Although Plaintiff Francisco Zepeda Ramos and the other H-2B workers also worked in other states throughout their employment with the Defendants, they were required to pay for these housing facilities throughout their entire contract with Defendants.

54.     During his employment with Defendants, Plaintiff Jose H. Ruiz Ramos lived in a housing facility, as described in Paragraphs 48 and 50-51, with nineteen (19) other H-2B workers. Each of the occupants paid $50.00 per week in rent to Juan Campos Guzman, the farm labor contractor for Defendants. These sums exceeded the actual costs of providing the housing facility and included a substantial profit for Juan Campos Guzman.

55.     Although Plaintiff Jose H. Ruiz Ramos worked in Florida for Defendants for less than a week, he was required to pay for the housing facilities in Walterboro throughout his employment contract with Defendants.

56.     At all times relevant to this action, Defendants owned or controlled the housing facilities described in Paragraphs 48 and 50-51 through their agent, Juan Campos Guzman.

57.     At all times relevant to this action, the housing facilities described in Paragraphs 48 and 50-51 were provided to Plaintiffs by Defendants, within the meaning of the AWPA, 29 U.S.C. §1821(c), and its implementing regulations, 29 C.F.R. §500.75(f) .

58.     In violation of the AWPA, 29 U.S.C. § 1823(b)(1), Defendants permitted Plaintiffs and other migrant agricultural workers to occupy the housing facilities described in Paragraph 48 and 50-51 with having any State or local health authority or other appropriate agency first certifying that the facilities met applicable health and safety standards. No State, local or federal agency has ever certified these facilities as meeting applicable safety and health standards.

59.     In violation of the AWPA, 29 U.S.C. § 1823(a), Defendants failed to ensure that the housing facilities described in Paragraphs 48 and 50-51 complied with substantive Federal safety and health standards applicable to the housing. Among other things, the facilities lacked the requisite number of square footage for each occupant and lacked beds for each worker.

60.     Defendants failed to post in a conspicuous place or to present to Plaintiffs a written statement of the terms and conditions of occupancy at the housing facilities described in Paragraph 48 and 50-51, as required by the AWPA, 29 U.S.C. § 1821(c) and (g), and its implementing regulations, 29 C.F.R. § 500.75(f) and 500.78.

61.     At all times relevant to this action, Defendants transported or caused the transportation of Plaintiffs on a daily basis in various vans. Defendants failed to obtain an insurance policy or liability bond insuring them in the requisite amounts against liability for damages to persons and property arising from the transportation of Plaintiffs in these vehicles, thereby violating the AWPA, 29 U.S.C. § 1841(b)(1)(C), and its attendant regulations, 29 C.F.R. § 500.120 and 500.121.

62.     The vans used to transport Plaintiffs as described in Paragraph 61 were operated by drivers who lacked valid and appropriate licenses as required by state law to operate these vehicles, in violation of the AWPA 29 U.S.C. § 1841(b)(1)(B), and its attendant regulations, 29 C.F.R. § 500.105(b).

63.     At no time relevant to this action was Juan Campos Guzman authorized by the USDOL to perform activities as a farm labor contractor, including housing and transporting migrant agricultural workers, in violation of the AWPA 29 U.S.C. § 1841(b)(1)(B), and its attendant regulations, 29 C.F.R. § 500.105(b).

64.     Prior to utilizing the services of Juan Campos Guzman as a farm labor contractor, Defendants did not take reasonable steps to determine whether Juan Campos Guzman possessed a certificate of registration from the USDOL authorizing him to engage in activities as a farm labor contractor, including controlling the housing and transporting of migrant agricultural workers in any vehicle, in violation of the AWPA 29 U.S.C. § 1842 and its attendant regulations, 29 C.F.R. §500.40.

**E.    *Plaintiff Francisco Zepeda Ramos – Pay and work***

65.     During his employment with Defendants in the 2015-2016 reforestation season, Plaintiff Francisco Zepeda Ramos planted pine tree seedlings, applied pesticides to planted tree saplings and baled pine straw.

66.     During the 2015-16 reforestation season, Plaintiff Francisco Zepeda Ramos was compensated at an hourly rate for applying pesticides and was compensated on a piece rate basis when planting seedlings and baling pine straw.

67.     Plaintiff Francisco Zepeda Ramos was compensated at the designated prevailing wage for hourly work. He was paid a piece rate of $27.00 per bag of tree seedlings planted and $1.00 for each bale of pine straw he gathered and baled.

68.     During his employment with the Defendants in the 2015-2016 season, Plaintiff Francisco Zepeda Ramos regularly worked over forty (40) hours in a workweek. Defendants failed to pay him at 1.5 times his regular rate for the time he worked in excess of 40 hours in a workweek. Defendants also failed to credit Zepeda Ramos with all compensable hours worked. As a result, Plaintiff Francisco Zepeda Ramos did not receive all compensation due under the FLSA and his employment contract for his regular and overtime hours worked. In addition, Defendants unlawfully withheld sums from Plaintiff Zepeda Ramos' earnings for rent with

respect to the unpermitted and substandard housing facilities described in Paragraph 48 and 50-51. Additionally, the wage statements that Defendants provided to Plaintiff Francisco Zepeda Ramos did not accurately reflect the hours worked or the amount of piece rate work performed.

69.    Because Defendants failed to accurately record the number of compensable hours worked or piece work units earned  as described in Paragraph 68, Plaintiff  Francisco Zepeda Ramos did not paid the wages owed him under the FLSA and his employment contract, in violation of the AWPA, 29 U.S.C. § 1822(a).

70.    Upon his completion of the 2015-2016 reforestation season, Defendants failed to provide or pay for the return transportation of Plaintiff Francisco Zepeda Ramos to his home in Mexico.

71.    During his employment with Defendants in the 2016-2017 reforestation season, Plaintiff Francisco Zepeda Ramos was employed to assist a crew supervisor in overseeing the work of other H-2B workers.

72.    Plaintiff Francisco Zepeda Ramos was compensated at a rate of $100.00 per day for his work described in Paragraph 71. Although Plaintiff Francisco Zepeda Ramos often worked over forty (40) hours in a workweek during the 2016-17 reforestation season, Defendants failed to pay him at 1.5 times his regular rate for the time he worked in excess of 40 hours in a workweek. Defendants also failed to credit Zepeda Ramos with all compensable hours worked. In addition, Defendants unlawfully withheld sums from Plaintiff Zepeda Ramos' earnings for rent with respect to the unpermitted and substandard housing facilities described in Paragraph 48 and 50-51.  As a result, Plaintiff Francisco Zepeda Ramos did not receive all compensation due under the FLSA and his employment contract for his regular and overtime hours worked.

73.     Upon his completion of the 2016-17 reforestation season, Defendants failed to provide or pay for the return transportation of Plaintiff Francisco Zepeda Ramos to his home in Mexico.

74.     During his employment with Defendants in the 2017-2018 reforestation season, Plaintiff Francisco Zepeda Ramos was employed to assist a crew supervisor in overseeing the work of other H-2B workers.

75.     Plaintiff Francisco Zepeda Ramos was compensated at a rate of $100.00 per day for his work described in Paragraph 74. Although Plaintiff Francisco Zepeda Ramos often worked over forty (40) hours in a workweek during the 2017-2018 reforestation season, Defendants failed to pay him at 1.5 times his regular rate for the time he worked in excess of 40 hours in a workweek. Defendants also failed to credit Zepeda Ramos with all compensable hours worked. As a result, Plaintiff Francisco Zepeda Ramos did not receive all compensation due under the FLSA and his employment contract for his regular and overtime hours worked.

### F.     *Plaintiff Jose H. Ruiz Ramos – Pay and work*

76.     Plaintiff Jose H. Ruiz Ramos was employed by Defendants during the 2017-2018 season.

77.     Plaintiff Jose H. Ruiz Ramos' work consisted of planting tree seedlings, cultivating trees (trimming, fumigating, fertilizing), and baling pine straw. He performed most of this work in South Carolina.

78.     Plaintiff Jose H. Ruiz Ramos was compensated at the designated prevailing wage for hourly work.  He was paid a piece rate of $30.00 per bag of tree seedlings planted and $1.00 for each bale of pine straw he gathered and baled.

79.    During his employment with the Defendants in the 2017-18 season, Plaintiff Jose H. Ruiz Ramos regularly worked over forty (40) hours in a workweek. Defendants failed to pay him at 1.5 times his regular rate for the time he worked in excess of 40 hours in a workweek. Defendants also failed to credit Ruiz Ramos with all compensable hours worked. In addition, Defendants unlawfully withheld sums from Plaintiff Ruiz Ramos' earnings for rent with respect to the unpermitted and substandard housing facilities described in Paragraph 48 and 50-51.  As a result, Plaintiff Jose H. Ruiz Ramos did not receive all compensation due under the FLSA or his employment contract for his regular and overtime hours worked. Additionally, the wage statements that Defendants provided to Plaintiff Jose H. Ruiz Ramos did not accurately reflect the hours worked or the amount of piece rate work performed.

## COUNT I

**(Migrant and Seasonal Agricultural Protection Act
29 U.S.C. §§ 1801, *et seq.* "AWPA"
2017-2018 Reforestation Season)**

80.    Plaintiffs incorporate Paragraphs 1 through 79 as if fully stated herein.

81.    This count sets forth a claim for damages by Plaintiffs Francisco Zepeda Ramos and Jose H. Ruiz Ramos for Defendants' violations of the AWPA, during the 2017-2018 reforestation season.

82.    During the 2017-18 season, Defendants violated Plaintiffs' rights under the AWPA by, *inter alia:*

(a) Utilizing the services of Juan Campos Guzman  to perform farm labor contracting without first taking reasonable steps to determine whether he possessed a valid certificate of registration as a farm labor contractor authorizing it to perform farm labor contracting activities, in violation of 29 U.S.C. § 1842;

(b) Failing to obtain authorization from the USDOL to transport migrant agricultural workers, in violation of 29 U.S.C. § 1811;

(c) Causing the transportation of Plaintiffs without insuring that the driver of the vehicles held a valid and appropriate driver's license, in violation of 29 U.S.C. § 1841(b)(1)(B);

(d) Causing the transportation of Plaintiffs without having an insurance policy or liability bond in the amounts prescribed by the AWPA in effect which insured Defendants for damages to persons or property resulting from the operation of these vehicles, in violation of 29 U.S.C. § 1841 (b)(1)(C);

(e) Permitting Plaintiffs to occupy the housing facilities described in Paragraphs 48 and 50-51 without those facilities first being first certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards, in violation of 29 U.S.C. § 1823(b)(1);

(f) Failing to ensure that the housing facilities it owned or controlled and which was furnished to Plaintiffs as described in Paragraph 48 and 50-51 met substantive Federal safety and health standards applicable to the housing, in violation of 29 U.S.C. § 1823(a);

(g) Failing to post in a conspicuous place or to present to Plaintiffs a written statement of the terms and conditions of occupancy at the housing facilities provided to them, in violation of the AWPA, 29 U.S.C. § 1821(c) and (g), and its implementing regulations, 29 C.F.R. § 500.75(f) and 500.78;

(h) Failing at the time of his recruitment to provide Plaintiffs with a written statement in Spanish of the terms and conditions of proffered employment, in violation of the

AWPA, 29 U.S.C. § 1821(a) and (g), and its implementing regulations, 29 C.F.R. § 500.75(b) and 500.78;

(i) Failing to keep and preserve complete and accurate payroll records with respect to the labor of Plaintiffs, in violation of 29 U.S.C. § 1821(d)(1) and 29 C.F.R. § 500.80(a);

(j) Failing to provide Plaintiffs each payday with wage statements that accurately reported his hours of work and piece work units earned, in violation of the AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d);

(k) Failing to pay wages, including overtime wages, when due, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81, by:

    i. failing to reimburse Plaintiffs for pre-employment expenses incurred primarily for Defendants' benefit, as described in Paragraphs 45 through 47;

    ii. compensating Plaintiffs at less than the prevailing wage for piece-work performed;

    iii. failing to compensate Plaintiffs as required by the FLSA and his employment contract.; and

    iv. Unlawfully withholding from Plaintiffs' wages sums for rent with respect to the unpermitted and substandard housing facilities furnished to them, as described in Paragraphs 48 and 50-51.

(j) Breaching the terms of the working arrangement made with Plaintiffs by not compensating them at the promised wage rate, in violation of the AWPA, 29 U.S.C. § 1822(c).

83.     Pursuant to 29 U.S.C. § 1854(c), Plaintiffs are entitled to receive the greater of their actual damages or up to $500.00 in statutory damages for each violation of the AWPA and its attendant regulations.

## COUNT II

**(Migrant and Seasonal Agricultural Protection Act,**
**29 U.S.C. §§ 1801, *et seq.***
**Francisco Zepeda Ramos 2016-2017 Reforestation Season)**

84.     Plaintiffs incorporate Paragraphs 1 through 83 as if fully stated herein.

85.     This count sets forth a claim for damages by Plaintiff Francisco Zepeda Ramos for Defendants' violations of the AWPA, during the 2016-17 reforestation season.

86.     During the 2016-17 season, Defendants violated the rights of Francisco Zepeda Ramos under the AWPA by, *inter alia:*

(a) Utilizing the services of Juan Campos Guzman  to perform farm labor contracting without first taking reasonable steps to determine whether he possessed a valid certificate of registration as a farm labor contractor authorizing it to perform farm labor contracting activities, in violation of 29 U.S.C. § 1842;

(b) Failing to obtain authorization from the USDOL to transport migrant agricultural workers, in violation of 29 U.S.C. § 1811;

(c) Causing the transportation of Plaintiff Francisco Zepeda Ramos without having an insurance policy or liability bond in the amounts prescribed by the AWPA in effect which insured Defendants for damages to persons or property resulting from the operation of these vehicles, in violation of 29 U.S.C. § 1841 (b)(1)(C);

(d) Permitting Plaintiff Francisco Zepeda Ramos to occupy the housing facilities described in Paragraphs 48 and 50-51 without those facilities first being first certified by a State

or local health authority or other appropriate agency as meeting applicable safety and health standards, in violation of 29 U.S.C. § 1823(b)(1);

(e) Failing to ensure that the housing facilities it owned or controlled and which was furnished to Plaintiff Francisco Zepeda Ramos as described in Paragraph 48 and 50-51 met substantive Federal safety and health standards applicable to the housing, in violation of 29 U.S.C. § 1823(a);

(f) Failing to post in a conspicuous place or to present to Plaintiff  Francisco Zepeda Ramos a written statement of the terms and conditions of occupancy at the housing facilities provided to him, in violation of the AWPA, 29 U.S.C. § 1821(c) and (g), and its implementing regulations, 29 C.F.R. § 500.75(f) and 500.78;

(g) Failing at the time of his recruitment to provide Plaintiff Francisco Zepeda Ramos with a written statement in Spanish of the terms and conditions of proffered employment, in violation of the AWPA, 29 U.S.C. § 1821(a) and (g), and its implementing regulations, 29 C.F.R. § 500.75(b) and 500.78;

(h) Failing to keep and preserve complete and accurate payroll records with respect to the labor of Plaintiff Francisco Zepeda Ramos,  in violation of 29 U.S.C. § 1821(d)(1) and 29 C.F.R. § 500.80(a);

(i) Failing to provide Plaintiff Francisco Zepeda Ramos each payday with wage statements that accurately reported his hours of work and piece work units earned, in violation of the AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d);

(j) Failing to pay wages, including overtime wages, when due, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81, by:

     i.     failing to reimburse Plaintiff Francisco Zepeda Ramos for pre-employment expenses incurred primarily for Defendants' benefit, as described in Paragraphs 45 through 47;

     ii.    compensating Plaintiff Francisco Zepeda Ramos at less than the prevailing wage for piece-work performed;

     iii. failing to compensate Plaintiff Francisco Zepeda Ramos as required by the FLSA and his employment contract;

     iv.   Unlawfully withholding from Plaintiffs' wages sums for rent with respect to the unpermitted and substandard housing facilities furnished to him as described in Paragraphs 48 and 50-51.

(h) Breaching the terms of the working arrangement made with Plaintiff Francisco Zepeda Ramos by not compensating him at the promised wage rate, in violation of the AWPA, 29 U.S.C. § 1822(c) and by not providing or paying for his return transportation to Mexico at the conclusion of the 2016-17 season.

87.     Pursuant to 29 U.S.C. § 1854(c), Plaintiff Francisco Zepeda Ramos is entitled to receive the greater of his actual damages or up to up to $500.00 in statutory damages for each violation of the AWPA and its implementing regulations.

### COUNT III

**(Migrant and Seasonal Agricultural Protection Act,
29 U.S.C. §§ 1801, *et seq.*
Francisco Zepeda Ramos 2015-2016 Reforestation Season)**

88.     Plaintiffs incorporate Paragraphs 1 through 88 as if fully stated herein.

89.     This count sets forth a claim for damages by Plaintiff Francisco Zepeda Ramos for Defendants' violations of the AWPA, during the 2015-2016 reforestation season.

90.     During the 2015-2016 season, Defendants violated the rights of Francisco Zepeda Ramos under the AWPA by, *inter alia:*

(a) Utilizing the services of Juan Campos Guzman  to perform farm labor contracting without first taking reasonable steps to determine whether he possessed a valid certificate of registration as a farm labor contractor authorizing it to perform farm labor contracting activities, in violation of 29 U.S.C. § 1842;

(b) Failing to obtain authorization from the USDOL to transport migrant agricultural workers, in violation of 29 U.S.C. § 1811;

(c) Causing the transportation of Plaintiff Francisco Zepeda Ramos without insuring that the driver of the vehicles held a valid and appropriate driver's license, in violation of 29 U.S.C. § 1841(b)(1)(B);

(d) Causing the transportation of Plaintiff Francisco Zepeda Ramos without having an insurance policy or liability bond in the amounts prescribed by the AWPA in effect which insured Defendants for damages to persons or property resulting from the operation of these vehicles, in violation of 29 U.S.C. § 1841 (b)(1)(C);

(e) Permitting Plaintiff Francisco Zepeda Ramos to occupy the housing facilities described in Paragraphs 48 and 50-51 without those facilities first being first certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards, in violation of 29 U.S.C. § 1823(b)(1);

(f) Failing to ensure that the housing facilities it owned or controlled and which was furnished to Plaintiff Francisco Zepeda Ramos as described in Paragraph 48 and 50-51 met substantive Federal safety and health standards applicable to the housing, in violation of 29 U.S.C. § 1823(a);

(g) Failing to post in a conspicuous place or to present to Plaintiff  Francisco Zepeda Ramos a written statement of the terms and conditions of occupancy at the housing facilities provided to him, in violation of the AWPA, 29 U.S.C. § 1821(c) and (g), and its implementing regulations, 29 C.F.R. § 500.75(f) and 500.78;

(h) Failing at the time of his recruitment to provide Plaintiff Francisco Zepeda Ramos with a written statement in Spanish of the terms and conditions of proffered employment, in violation of the AWPA, 29 U.S.C. § 1821(a) and (g), and its implementing regulations, 29 C.F.R. § 500.75(b) and 500.78;

(i) Failing to keep and preserve complete and accurate payroll records with respect to the labor of Plaintiff Francisco Zepeda Ramos, in violation of 29 U.S.C. § 1821(d)(1) and 29 C.F.R. § 500.80(a);

(j) Failing to provide Plaintiff Francisco Zepeda Ramos each payday with wage statements that accurately reported his hours of work and piece work units earned, in violation of the AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d);

(k) Failing to pay wages, including overtime wages, when due, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81, by:

    i.    failing to reimburse Plaintiff Francisco Zepeda Ramos for pre-employment expenses incurred primarily for Defendants' benefit, as described in Paragraphs 45 through 47;

    ii.  failing to compensate Plaintiff Francisco Zepeda Ramos as required by the FLSA and his employment contract.

iii.    Unlawfully withholding from Plaintiffs' wages sums for rent with respect to the unpermitted and substandard housing facilities furnished to him, as described in Paragraphs 48 and 50-51.

(i) Breaching the terms of the working arrangement made with Plaintiff Francisco Zepeda Ramos by not compensating him at the promised wage rate, in violation of the AWPA, 29 U.S.C. § 1822(c) and by not providing or paying for his return transportation to Mexico at the conclusion of the 2015-16 season.

91.    Pursuant to 29 U.S.C. § 1854(c), Plaintiff Francisco Zepeda Ramos is entitled to receive the greater of his actual damages or up to up to $500.00  in statutory damages for each violation of the AWPA and its implementing regulations.

## COUNT IV

### (Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.*)

92.    Plaintiffs hereby incorporate Paragraphs 1 through 91 as if fully stated herein.

93.    This count sets forth a claim for damages by Plaintiffs for Defendants' violations of the FLSA.

94.    In violation of 29 U.S.C. § 206 (a), Defendants failed to pay Plaintiffs wages of $7.25 per hour in each workweek in which they were employed, by failing to compensate Plaintiffs their wages for all work performed.

95.    In violation of 29 U.S.C. § 207, Defendants violated the rights of Plaintiffs by employing them for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours during the workweek at rates not less than one and one-half times the regular rate at which they were employed.

96.    The violations of the FLSA set out in Paragraphs 94 and 95 resulted in part from Defendants' failure during the first week of employment to reimburse Plaintiffs for the pre-employment transportation, visa, lodging and documentary expenses they incurred that primarily benefitted Defendants.

97.    The violations set out in Paragraphs 94 and 95 resulted in part from Defendant's withholding of sums from Plaintiffs' wages as rent with respect to the unpermitted and substandard housing facilities described in Paragraphs 48 and 50-51.

98.    Defendants' violations of the FLSA were willful, for purposes of the FLSA. 29 U.S.C. §255. Defendants knew their conduct violated the FLSA or reckless disregarded the applicability of the FLSA to their operations.

99.    Pursuant to 29 U.S.C. §216(b), Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, overtime wages and an equal amount in liquidated damages, along with a reasonable attorney's fee.

## COUNT V

### (South Carolina Payment of Wages Act., S.C. Code §41-10-10, *et seq.*)

100.    Plaintiffs hereby incorporate Paragraphs 1 through 99 as if fully stated herein.

101.    This count sets forth a claim for damages by Plaintiffs for Defendants' violations of the South Carolina Payment of Wages Act.

102.    As described in Paragraphs 68, 72 and 79, Defendants failed to pay Plaintiffs their wages when due, in violation of S.C. Code § 41-10-50.

103.    Defendants' failure to pay Plaintiffs their wages when due resulted in damages.

104.    Pursuant to S.C. Code § 41-10-80(C), the Plaintiffs are entitled to and seek treble damages for unpaid wages.

105.    Pursuant to S.C. Code § 41-10-80(C), the Plaintiffs seek a reasonable attorney's fee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

a.  Granting judgment in favor of Plaintiffs and against Defendants Stone Forestry Services and Randy Stone, jointly and severally, on their AWPA claims for the 2017-2018 reforestation season as set forth in Count One, and awarding them their damages or, alternatively, statutory damages of $500.00, whichever is greater, for each violation of the AWPA and its implementing regulations set out in that Count;

b.  Granting judgment in favor of Plaintiff Francisco Zepeda Ramos and against Defendants Stone Forestry Services and Randy Stone, jointly and severally, on his AWPA claims for the 2016-17 reforestation season as set forth in Count Two, and awarding him his actual damages or, alternatively, statutory damages of $500.00, whichever is greater, for each violation of the AWPA and its implementing regulations set out in that Count;

c.  Granting judgment in favor of Plaintiff Francisco Zepeda Ramos and against Defendants Stone Forestry Services and Randy Stone, jointly and severally, on his AWPA claims for the 2015-16 reforestation season as set forth in Count Three, and awarding him his actual damages or, alternatively, statutory damages of $500.00, whichever is greater, for each violation of the AWPA and its implementing regulations set out in that Count;

d.  Granting judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' FLSA claims as set forth in Count Four, and awarding each of them the amount of his unpaid minimum and overtime wages and an equal amount as liquidated damages;

e.  Granting judgment in favor of Plaintiffs and against Defendants, jointly and severally, on

Plaintiffs' claims for violations of the South Carolina Wage Payment Act , as set forth in

Count Five and granting each Plaintiff treble damages for each violation of S.C. Code

§41-10-40, pursuant to S.C. Code §41-10-80 (C);

f.  Awarding Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. § 216 (b) and S.C.

Code § 41-10-80 (C);

g.  Awarding Plaintiffs the costs of this action; and

h.  Granting such further relief as this Court deems just and appropriate.

Respectfully Submitted,

*/s/ **Karla Martinez***
Karla Martinez
Fed. ID No.12657
SOUTH CAROLINA LEGAL
    SERVICES
MIGRANT UNIT
2803 Carner Avenue
North Charleston, SC 29405
Tel:     (843) 266-2168
Fax:     (843) 760-1090
e-mail: karlamartinez@sclegal.org

*Attorney for Plaintiffs*